United States District Court
Southern District of Texas
**ENTERED**
March 16, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO LAGUNAS, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-00017 |
| LA RANCHERA, INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND OPINION

Fernando Lagunas was a route driver and sales representative for La Ranchera, Inc., a producer and distributor of tortillas, chips, and masa. Lagunas sued La Ranchera, alleging that the company failed to pay route drivers and sales representatives for overtime work and made improper deductions from their wages, in violation of the Fair Labor Standards Act. Lagunas also alleges that La Ranchera misclassified its route drivers and sales representatives as independent contractors. La Ranchera countersued, alleging that Lagunas breached his contract with La Ranchera by selling competing products to La Ranchera's customers shortly after La Ranchera ended its distributor agreement with Lagunas. La Ranchera also alleges that Lagunas violated the Texas Uniform Trade Secrets Act by misusing La Ranchera's customer lists, and that Lagunas tortiously interfered with La Ranchera's business and contractual relationships with its customers. La Ranchera moved for preliminary injunctive relief on its counterclaim, seeking an order requiring Lagunas to return any confidential information still in his possession and to refrain from soliciting La Ranchera's customers. (Docket Entry No. 7).

The pleadings, motion, response, and the record provide an inadequate basis to grant the extraordinary remedy of a preliminary injunction that La Ranchera seeks. The court denies its application for relief, for the reasons explained in detail below.

## I. The Legal Standard for a Preliminary Injunction

A court may grant a preliminary injunction if the movant shows: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is no issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). The party seeking injunctive relief must meet all four requirements. *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016). "[A] preliminary injunction is an extraordinary remedy never awarded as of right," and it "does not follow as a matter of course from a [party's] showing of likelihood of success on the merits." *Benisek v. Lamone*, 138 S.Ct. 1942, 1943–44 (2018) (quotation omitted).

## II. Analysis

Lagunas and La Ranchera entered into a distributor agreement on October 7, 2019. (Docket Entry No. 7-2, at 1). The agreement stated that Lagunas would "provide[] product transportation services and marketing services" for La Ranchera, and that La Ranchera would provide Lagunas with "Protected Information," defined to include "pricing, delivery payment percentages, customer names and contact information, and other business methods . . . so that [Lagunas] [could] perform the sales part of the services being provided to La Ranchera." (*Id.*, at 1, 7). The agreement required Lagunas to return any "Protected Information" in his possession to

2

La Ranchera after the agreement ended, to cease use of any "Protected Information," and to keep the information confidential. (*Id.*, at 7). The agreement also stated that Lagunas could not "directly or indirectly, perform any services to businesses (whether as an employee or contractor) which sell competing products to those sold by La Ranchera within the geographical territory or establishment serviced or solicited by [La Ranchera]" "for a period of twelve (12) months" after the distributor agreement ended. (*Id.*).

La Ranchera ended its relationship with Lagunas in November 2021. La Ranchera alleges that it "recently learned that Mr. Lagunas is selling competing products to La Ranchera's established customers." (Docket Entry No. 7-1, at 3). La Ranchera asserts that it "has determined from several of its customers that they have decided to move their business to Mr. Lagunas, who has apparently been working with or affiliated with Del Comal Tortilla Factory, a local food producer. Del Comal Tortilla Factory sells products that compete with La Ranchera's products, including corn and flour tortilla products." (*Id.*).

Lagunas admits that he currently works as a route driver for Del Comal Tortilla Factory. (Docket Entry No. 10, at 9). Lagunas also admits that he has been in touch with some of La Ranchera's customers, but he asserts that he did not contact the customers "on his own accord." (*Id.*). Instead, he claims that "a few of La Ranchera's customers directly contacted [him] on their own to ask him what products he was delivering for Del Comal and if he knew of another company that sold tortillas aside from La Ranchera because . . . [La Ranchera's] pricing was getting too expensive for them." (*Id.*). Lagunas asserts that Del Comal is "not a direct competitor with La

3

Ranchera" because it "not only provides tortillas, but also cooking, oil, flour, bread, and beans to its customers." (*Id.*, at 10).

Lagunas also claims that his agreement with La Ranchera actually ended in October 2020, not November 2021, so that the twelve-month restriction on performing services for a La Ranchera competitor expired in October 2021. (Docket Entry No. 10, at 7). Lagunas asserts, moreover, that "[a]lthough La Ranchera provided [him] with its customer lists and contact information, it never provided to him the other information that it alleges was confidential, including (but not limited to) pricing, delivery payments, or other business methods/strategies." (*Id.*, at 10).

This court need not determine the precise date when the noncompete clause in the distributor agreement between Lagunas and La Ranchera ended to resolve this motion. Although the distributor agreement prohibits Lagunas from "directly or indirectly, perform[ing] any services to businesses (whether as an employee or contractor) which sell competing products to those sold by La Ranchera within the geographical territory or establishment serviced or solicited by [La Ranchera]" "for a period of twelve (12) months" after the distributor agreement ends, (*id.*), La Ranchera did not ask this court to enjoin Lagunas from working for Del Comal. Instead, La Ranchera seeks to enjoin Lagunas from using La Ranchera's confidential information to "solicit . . . La Ranchera's customers and employees," and to prohibit Lagunas from "servic[ing] . . . La Ranchera's customers." (Docket Entry No. 7, at 9). The distributor agreement appears to prohibit Lagunas from using La Ranchera's "Protected Information" indefinitely. (*See* Docket Entry No. 7-2, at 7 ("Upon termination of this Agreement, all copies of the Protected Information then in the

4

possession of the Distributor shall be promptly returned to La Ranchera, and the Distributor shall have no right to use of the Protected Information following such termination.")).

There is, however, no evidence in the record that Lagunas improperly used La Ranchera's "Protected Information" after he stopped working for La Ranchera and started working for Del Comal. Lagunas admits that La Ranchera provided him with customer lists, but he asserts that he did not use those lists to reach out to La Ranchera's customers. Instead, he claims that the customers contacted him. Lagunas alleges that when La Ranchera customers contacted him, "[he] gave them the pricing for Del Comal," and did not disclose "Protected Information" about La Ranchera. (Docket Entry No. 10-1, at 1–2). La Ranchera provides no evidence to refute this allegation, speculating only from the fact that "several of its customers . . . have decided to move their business to Mr. Lagunas," that he "is attempting to earn money for himself by stealing La Ranchera's customers and harming its business." (Docket Entry No. 7-1, at 2–3). This speculative allegation is not sufficient to show that Lagunas has attempted to "steal" La Ranchera's customers by using any proprietary or protected information provided to him by La Ranchera.

The distributor agreement between Lagunas and La Ranchera does not prohibit him from servicing La Ranchera customers who reach out to Lagunas independently and decide, based on "the pricing for Del Comal," to switch from purchasing La Ranchera products to Del Comal products. The agreement does prohibit Lagunas from working for a competitor who sells similar products to La Ranchera for a period of twelve months post-termination, presumably to avoid this exact scenario from occurring. But the "specific relief" that La Ranchera has sought does not include enjoining Lagunas from working for Del Comal. The motion seeks only to "enjoin[] Mr. Lagunas from exploiting La Ranchera's Protected Information." (Docket Entry No. 7, at 8).

5

Lagunas asserts that La Ranchera did not provide him with any "Protected Information" other than the customer lists. La Ranchera provides no evidence to refute this assertion or to support that Lagunas has "exploit[ed]" the customer lists.

Absent a sufficient showing that Lagunas has solicited customers or disclosed La Ranchera's "Protected Information," there is no basis for this court to preliminarily enjoin Lagunas from soliciting La Ranchera's customers or disclosing "confidential and/or trade secret information." (Docket Entry No. 7, at 9). Because La Ranchera has not demonstrated a "substantial likelihood of success on the merits" on its claims, the motion for a preliminary injunction is denied. The court also denies La Ranchera's request for "expedited discovery concerning the actions of Mr. Lagunas." (*Id.*, at 10). A scheduling order will be separately entered setting forth the deadlines for resolving Lagunas's FLSA claim and La Ranchera's counterclaim at the initial conference to be held on **March 25, 2022, at 10:10 A.M.,** by Zoom.

SIGNED on March 16, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge