United States District Court
Southern District of Texas
**ENTERED**
August 25, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO LAGUNAS, *on behalf of himself and others similarly situated*, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-17 |
| LA RANCHERA, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM AND OPINION

Fernando Lagunas was a driver and sales representative for La Ranchera, Inc., a producer and distributor of tortillas, chips, and masa. Lagunas sued under the Fair Labor Standards Act, alleging that La Ranchera failed to pay route drivers and sales representatives for overtime work and made improper deductions from their wages. Lagunas has moved to certify a collective action. (Docket Entry No. 34). In response, La Ranchera argues that Lagunas fails to show that the route drivers are similarly situated. (Docket Entry No. 37). La Ranchera has also moved for summary judgment, arguing that Lagunas has not sufficiently shown his eligibility for overtime pay. (Docket Entry No. 37).

Having reviewed the briefs, the record, and the applicable law, the motion to certify this FLSA collective action, (Docket Entry No. 34), is granted. The motion for summary judgment, (Docket Entry No. 37), is denied as premature. The reasons are explained below.

### I.     Background

Lagunas and La Ranchera entered into a distributor agreement on October 7, 2019. (Docket Entry No. 7-2, at 1). The agreement stated that Lagunas would "provide[] product

transportation services and marketing services" for La Ranchera, and that La Ranchera would provide Lagunas with "Protected Information," defined to include "pricing, delivery payment percentages, customer names and contact information, and other business methods . . . so that [Lagunas] [could] perform the sales part of the services being provided to La Ranchera." (*Id.*, at 1, 7). The agreement required Lagunas to return any "Protected Information" in his possession to La Ranchera after the agreement ended, to stop using any "Protected Information," and to keep the information confidential. (*Id.*, at 7). The agreement also stated that Lagunas could not "directly or indirectly, perform any services to businesses (whether as an employee or contractor) which sell competing products to those sold by La Ranchera within the geographical territory or establishment serviced or solicited by [La Ranchera]" "for a period of twelve (12) months" after the distributor agreement ended. (*Id.*).

La Ranchera ended its relationship with Lagunas in November 2021. Lagunas alleges that, during his employment, he was not paid as the FLSA requires despite working over 40 hours per week. He alleges that during his employment, 32 similarly situated delivery drivers also worked over 40 hours per week. Each driver signed a nearly identical distributor agreement with La Ranchera. Lagunas alleges that La Ranchera misclassified him and the other delivery drivers as independent contractors rather than employees and failed to pay them for all the hours they worked.

Lagunas filed this collective action suit on January 4, 2022. He seeks to certify a class of delivery drivers that worked at La Ranchera within the three years preceding the filing of the lawsuit. The class would consist of individuals that drove delivery trucks for La Ranchera between January 4, 2019, and January 4, 2022.

**II.    The Legal Standards**

### A. Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor, *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B. The Fair Labor Standards Act

The FLSA requires covered employers to pay nonexempt employees for overtime hours, at a rate of one and one-half times their hourly rate. 29 U.S.C. § 207(a). Section 216(b) provides employees a cause of action against employers who violate § 207. Under § 216(b), employees may proceed in a collective action when they are "similarly situated." The Fifth Circuit has rejected the approach used in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987), and provided guidance for assessing whether potential collective action members in FLSA suits are "similarly situated" in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021).

In *Swales*, the Fifth Circuit explained that district courts should "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 439. Only then can the district court determine whether to conditionally certify and issue the opt-in notices. *Id.* at 434. The court has discretion to order targeted discovery to determine whether to conditionally certify and issue notice to potential

4

plaintiffs. *Id.* at 439. "The bottom line is that the district court has broad, litigation-management discretion [in class certification]." *Id.* at 443.

*Swales* looked to two principles to determine how a court should proceed in determining whether to certify a collective action on a conditional basis and issue notice: "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may 'facilitate[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at 434. "These are the only binding commands on district courts." *Id.* *Swales* emphasizes that a plaintiff suing as a representative has the burden of showing that the plaintiff and the proposed opt-ins are similarly situated. *Id.* at 443 n.65.

When "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted. *Id.* at 441–42. In *Swales*, the Fifth Circuit reaffirmed that certification depends on "whether merits questions can be answered collectively," and that the certification decision should be made "as early as possible." *Id.* There should be "[n]o judicial thumbs (or anvils) on the scale" related to the merits of the case at the certification stage. *Id.* at 436.

### III. Analysis

The core dispute between on the motion for certification is whether Lagunas and the other delivery drivers were similarly situated. The court holds that the drivers were similarly situated and that additional discovery is not needed for notice to be sent.

The record shows that the drivers signed nearly identical agreements with La Ranchera. It appears that La Ranchera slightly edited its standard agreement between 2017 and 2019—the 2019

version is double spaced, uses a different font and font size, bolds different words, and makes other largely stylistic edits—but the content of each agreement is nearly identical. For example, as the plaintiff points out, regardless of which agreement is considered, all of the following provisions are identical:

    i.    Drivers were required to "provide a clean delivery vehicle in good working order, operated by a competent driver holding a valid Texas commercial driver license; to train drivers in the proper loading, maintenance, and use of the vehicle; and to follow proper procedures for avoiding contamination of or other damage to La Ranchera's products." (Doc. 34-1, ¶ 1; and Doc. 34-2, ¶ 2).

    ii.    Drivers were required to pick up the products they were delivering "between the hours of 4:00 and 6:00 o'clock A.M.….at La Ranchera's loading facility in Houston" unless stated otherwise "by La Ranchera, in its sole discretion." (Doc. 34-1, ¶ 2; and Doc. 34-1, ¶ 2).

    iii.    The agreement set forth the standard of performance drivers were required to follow, including delivering "products safely, in good condition and in a timely manner…designat[ing] the place and time for delivery…devising safe and effective means for effecting delivery," and "conduct[ing] its business in a manner that will preserve the good reputation of La Ranchera." (Doc. 34-1, ¶ 3; and Doc. 34-2, ¶ 6).

    iv.    La Ranchera provided drivers with the territory and customers they were to serve, though drivers were "encouraged to initiate sales." La Ranchera maintained the right to approve any proposed customer and, while the driver could hypothetically vary his

6

        or her route, La Ranchera was "not required to agree to [such] a variation." (Doc. 34-1, ¶ 3; and Doc. 34-2, ¶ 3).

v.    The drivers were required to "promptly report any customer complaints or problems of any kind to La Ranchera," at which point the drivers were "required to assist La Ranchera, at no additional cost, and to the extent that La Ranchera determine[d] to be appropriate in its sole discretion, in resolving" the complaint. (Doc. 34-1, ¶ 3; and Doc. 34-2, ¶ 3).

vi.    La Ranchera required drivers to pay for any products that were damaged after receipt by the driver and before acceptance of the customer; however, La Ranchera retained title to its products while in the possession of the drivers. (Doc. 34-1, ¶ 4; and Doc. 34-2, ¶ 4).

vii.    Drivers were not allowed to "represent, sell or transport other products La Ranchera deems to be competitive with La Ranchera's Products unless agreed to by La Ranchera in writing." (Doc. 34-1, ¶ 5; and Doc. 34-2, ¶ 5).

viii.    La Ranchera set prices for its products by directly negotiating with customers, and drivers were required to collect payment upon delivery. "If requested by La Ranchera," the drivers were required to "furnish a current fidelity bond in such amount as La Ranchera may require." (Doc. 34-1, ¶ 8; and Doc. 34-2, ¶ 8).

ix.    Drivers were required to display at least two signs on their vehicle with the La Ranchera name when delivering its products and were not allowed to display these signs when delivering products for any other company. (Doc. 34-1, ¶ 9; and Doc. 34-2, ¶ 9).

  x. La Ranchera retained the right to change the drivers' territories and "engage other delivery providers to deliver its products to the same customers or to other customers in the same area." (Doc. 34-1, ¶ 10; and Doc. 34-2, ¶ 10).

  xi. On Thursdays, drivers were paid "either 17 percent of the customer collections . . . or such other percentage commission as La Ranchera shall in its sole discretion establish." (Doc. 34-1, ¶ 12; and Doc. 34-2, ¶ 12).

  xii. La Ranchera maintained the right to terminate the agreement "for cause in its sole discretion." (Doc. 34-1, ¶ 13; and Doc. 34-2, ¶ 13).

(Docket Entry No. 52 at 4–5).

  The only difference between the two agreements relevant to determining whether the drivers were similarly situated is the addition of one clause in the payment provision. The earlier version of the agreement stated: "La Ranchera will pay the Distributor either 17 percent of the customer collections delivered by the Distributor to La Ranchera during the preceding week ending on the preceding Sunday." (Docket Entry No. 34-2 at 4). Lagunas's agreement, with emphasis on the added clause,stated: "La Ranchera will pay the Distributor either 17 percent of the customer collections delivered by the Distributor to La Ranchera during the preceding week ending on the preceding Sunday, *or such other percentage commission as La Ranchera shall in its sole discretion establish based upon its relationship with particular customers.*" (Docket Entry No. 34-1 at 9).

  This distinction is not enough to make otherwise similarly situated employees dissimilar. *Swales* does not require each potential plaintiff to be identical in all respects. The employment provisions are identical in 12 other material ways. The minor distinction in the payment provisions will not be determinative the core issue: whether the drivers were independent contractors. As the

8

*Swales* court explained, the point of "addressing these issues from the outset" is to "ensure that any notice sent is proper in scope—that is, sent only to potential plaintiffs." *Swales*, 985 F.3d at 442. Certifying this collective action despite that difference in the payment provision does not raise the risk of the court "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool." *Id.* The drivers are sufficiently similarly situated for certification. The motion to certify, (Docket Entry No. 34), is granted.

The motion for summary judgment, (Docket Entry No. 37), is denied because it is premature on the current record. Disputed material facts preclude deciding the summary judgment motion—for example, whether Lagunas and others actually worked overtime and whether they were misclassified. Now that the class has been certified, additional discovery will likely occur. The defendants may refile the motion for summary judgment on a fuller record.

### IV.   Conclusion

The motion to certify the collective action, (Docket Entry No. 34), is granted. The motion for summary judgment, (Docket Entry No. 37), is denied. The court will confer with the parties regarding the scope of the notice and the timing at a status conference set **for September 13, 2023, at 10:00 a.m**. by Zoom. A Zoom link will be provided.

SIGNED on August 25, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge