IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO LAGUNAS, on Behalf of | § | |
| Himself and on Behalf of Others Similarly | § | |
| Situated | § | CA No. 4:22-cv-00017 |
|     Plaintiff, | § | |
| | § | |
| v. | § | JURY DEMANDED |
| | § | |
| LA RANCHERA, INC. | § | |
|     Defendant. | § | |

# DEFENDANT'S MOTION FOR PARTIAL
# SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM

LIONEL M. SCHOOLER (SBN 17803300)
Federal Bar No. 726
Jaclyn C. Staple (SBN 24114890)
Federal Bar No. 3241341
Michael Drab (SBN 24115826)
Federal Bar No. 3665349
1401 McKinney Ave., Suite 1900
Houston, Texas  77010
(713) 752-4200
(713) 308-4156 (Direct Fax)
E-mail: lschooler@jw.com

ATTORNEYS FOR DEFENDANT AND
COUNTER-PLAINTIFF
LA RANCHERA, INC.

# TABLE OF CONTENTS

**Page**

I. PROCEDURAL HISTORY ................................................................................................1

II. SUMMARY OF ARGUMENT ........................................................................................2

III. EVIDENCE SUPPORTING MOTION AND RESPONSE ...........................................2

IV. FACTUAL BACKGROUND ..........................................................................................2
    A. Introduction ..............................................................................................................2
    B. Lagunas' Activities with La Ranchera ....................................................................3
        1. Nature of Relationship ......................................................................................3
        2. Prior Sales Experience ......................................................................................3
        3. Exclusive Outside Sales Activity ......................................................................4
        4. Performing Outside Sales Activities ..................................................................5
    C. Financial Arrangement Between La Ranchera and Lagunas .....................................5

V. MOTION FOR PARTIAL SUMMARY JUDGMENT ....................................................5
    A. Burdens of Proof .......................................................................................................5
        1. La Ranchera's Burden of Proof .........................................................................5
        2. Lagunas' Burden of Proof .................................................................................6

VI. ARGUMENT ..................................................................................................................6
    A. Introduction ..............................................................................................................6
    B. Independent Contractor .............................................................................................7
        1. Introduction .......................................................................................................7
        2. Lagunas' March 2022 Declaration ....................................................................7
        3. Deposition Testimony ........................................................................................8
        4. Declaration by La Ranchera's Chief Financial Officer .....................................8
    C. Outside Salesperson Exemption ...............................................................................9
        1. Introduction .......................................................................................................9
        2. Outside Salesperson Factors Established by Department of Labor ...................9
        3. Application of the DOL Factors and Job Descriptions ....................................10
        4. The Fifth Circuit's Analysis of the DOL Factors ............................................11
        5. Summary Judgment on Misclassification Claim is Proper ...............................13

VII. CONCLUSION .............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................6

*Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741 (5th Cir. 1994)................................5

*Faludi v. U.S. Shale Sols., LLC*, 950 F.3d 269 (5th Cir. 2020) ........................................6

*Gray v. Powers*, 673 F.3d 352 (5th Cir. 2012) ...............................................................7

*Harvill v. Westward Comm'cns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005)....................................6

*Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014) ............................................6

*Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) ............................................7

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627 (5th Cir. 2014) ...............7

*Kans. Reinsurance Co. v. Cong. Mortg. Corp.*, 20 F.3d 1362 (5th Cir. 1994)...............................5

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000) ...........................5

*Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577 (5th Cir. 2013) ...........................11, 12, 13

*Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849 (S.D. Tex. 2014)....................................6

*Orozco v. Plackis*, 757 F.3d 445 (5th Cir. 2014*)* ........................................................7

*Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342 (5th Cir. 1980), *cert. denied*, 449
U.S. 1077 (1981)..........................................................................................6

*Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185 (5th Cir. 1979).........................................7

**Statutes**

29 U.S.C. §213(a)(1)........................................................................................9

Fair Labor Standards Act ....................................................................1, 6, 7, 9

**Regulations**

29 C.F.R. §§541.500 through 541.504(a) ....................................................9

29 C.F.R. § 541.504(b) ....................................................................10

29 C.F.R. § 541.504(c)....................................................................10, 12

29 C.F.R. §§ 541.504 *et seq.*...................................................................................................9

DEFENDANT LA RANCHERA, INC. submits its Motion for Partial Summary Judgment as to Plaintiff Fernando Lagunas' claims ("Motion"), and argues as follows:

## I. PROCEDURAL HISTORY

On January 4, 2022, Mr. Lagunas filed this collective action lawsuit under the Fair Labor Standards Act ("FLSA"), which seeks to recover wages for alleged unpaid overtime. *See **Dkt. No. 1***. On March 1, 2022, Mr. Lagunas filed a pleading styled "Response to Defendant's Application for Preliminary and Permanent Injunctive Relief." *See **Dkt. No. 10***. That pleading included a declaration from Mr. Lagunas, *see **Dkt. No. 10-1*** ("Lagunas March 22 Declaration"). Despite Lagunas' greater familiarity with his native language, Spanish, he acknowledged at his deposition conducted on June 2, 2022 (*see* Exhibit "C"), that his March 2022 Declaration contained his own words, all of which were truthful, and which he verified before signing the Declaration, which he acknowledged was intended to be testimony "under oath." *See* Exhibit "C-1," at pp. 26–28. The Court thereafter approved the certification process, and authorized Plaintiff's counsel to issue notice to the group of individuals identified as potential claimants in this matter. *See **Dkt. Nos.*** 55 and **61**.[1] In the 60-day opt-in period that ensued, Plaintiff successfully recruited ***one opt-in claimant***, identified as Mayra Acosta. *See **Dkt. No. 62***. The Court is requested to take judicial notice of the filing by that lone opt-in.[2]

---

[1] When it issued its ruling in ***Dkt. No. 55***, the Court simultaneously denied La Ranchera's motion for summary judgment as being "premature on the current record." *See **Dkt. No.*** 55 at p. 9. La Ranchera contends that in view of the results of the certification process, described below, and the passage of time, the time is now ripe for the Court to consider the merits of Plaintiff Lagunas' claim.

[2] Contemporaneously with the filing of this Motion, La Ranchera has filed a separate "motion for partial summary judgment" seeking a dismissal of the claim of Mayra Acosta on the merits. *See **Dkt. No. 65***. If the Court grants this Motion and the motion pertaining to the claim of Mayra Acosta, that will dispose of all claims by all Plaintiffs/Claimants in this case.

## II.  SUMMARY OF ARGUMENT

La Ranchera entered into a relationship with Mr. Lagunas as a "distributor" and marketer of its manufactured Mexican food products in October 2019.  Despite Mr. Lagunas' attempt to characterize himself solely as a "route driver" entitled to overtime pay, the summary judgment evidence demonstrates that Mr. Lagunas was an independent contractor, not an employee, of La Ranchera.  Alternatively, Mr. Lagunas was properly classified as an exempt outside salesperson. Accordingly, the Court should dismiss Mr. Lagunas' claim for unpaid overtime on the merits.

## III.  EVIDENCE SUPPORTING MOTION AND RESPONSE

La Ranchera submits the following evidence to support its Motion, which is included in the Appendix filed with this Motion.

| Ex. No. | Description |
| --- | --- |
| A | Declaration of Plaintiff Lagunas, March 1, 2022, ***Dkt. No.*** **10-1** ("Lagunas March 2022 Decl.") |
| B | Declaration of Plaintiff Lagunas, October 3, 2022, ***Dkt. No.*** **34-8** ("Lagunas October 2022 Decl.") |
| C-1 through C-12 | Excerpts from the Plaintiff's June 2, 2022, Deposition (identified as "Lagunas Depo. p. ___") |
| D | Declaration of Brian Trujillo, La Ranchera's Treasurer ("Trujillo Decl.") |
| E | Distributor Agreement Between Plaintiff and La Ranchera. |

## IV.  FACTUAL BACKGROUND

### A.  INTRODUCTION

The relationship between La Ranchera and Mr. Lagunas was formalized in a Distributor Agreement ("Agreement") establishing La Ranchera's relationship with Mr. Lagunas.  Mr. Lagunas has acknowledged that the Agreement was in effect during his relationship with La Ranchera.  *See **Dkt. No.** **34-1***, pgs. 2–13.[3] This Agreement identifies Mr. Lagunas as a "Distributor."  By contrast, Mr. Lagunas seeks to label himself as a "route driver." *See **Dkt. No.** **34**, p. 1.

---

[3] The Agreement is also attached as Exhibit "E" to this pleading for the Court's convenience.

## B.  Lagunas' Activities with La Ranchera

## 1.  Nature of Relationship

Mr. Lagunas had a working relationship with La Ranchera from October 7, 2019, until November 5, 2021.  *See Dkt. No.* **1**, ¶ 6.2.  Mr. Lagunas' principal responsibility during such time period was to market and sell La Ranchera's products to customers and prospective customers:

(1)   From the outset of its relationship with him, La Ranchera assigned Mr. Lagunas his own territory within which to conduct his marketing and sales activities.  *See* Exhibit "D," Trujillo Decl. at ¶ 5; Exhibit "C-3" Lagunas Depo. p. 35:9-23.

(2)   Mr. Lagunas would provide documentation to La Ranchera about proposed product sales he had generated for any given day.  *See* Exhibit "C-4," Lagunas Depo. p. 39:4-10;

(3)   To fulfill his distributor duties, Mr. Lagunas would then use his own vehicle, assisted by his own employee.  *See* Exhibit "C-5," Lagunas Depo. p. 36:16–37:3;

(4)   His duties included visiting with customers and prospective customers, filling product orders, and obtaining new product orders.  *See* Exhibit "C-6," Lagunas Depo. p. 40:7-10; and

(5)   To the extent Mr. Lagunas identified potential new customers or potential new orders from existing customers for La Ranchera products, he would solicit such business and then notify La Ranchera of the result of this activity.  *See* Exhibit "A," Lagunas March 2022 Decl. ¶ 6.

## 2.  Prior Sales Experience

Mr. Lagunas acknowledged that he possessed sales experience to perform his duties, as he "worked for a similar company ten (10) years before working at La Ranchera."  *See* Exhibit "B," Lagunas October 2022 Decl. ¶ 8.  Indeed, Mr. Lagunas disputed that La Ranchera had ever furnished him any training about marketing products.  Instead, he emphasized that he used his own experience and ideas to market La Ranchera products, as well as to develop new customer relationships or expand existing ones.  *See* Exhibit "A," Lagunas March 2022 Decl., ¶¶ 6, 8.

### 3. Exclusive Outside Sales Activity

Mr. Lagunas never maintained any office at La Ranchera headquarters.  He admitted that he only went to La Ranchera's warehouse to pick up product to market, or to drop off his daily sales report and place new product orders.  *See* Exhibit "C-8," Lagunas Depo. pp. 37:13-16; 41:14-19. Also, La Ranchera did not require that Mr. Lagunas work a set number of hours.  *See* Exhibit "D," Trujillo Decl. at ¶ 5.  Rather, he was only required to undertake the work he considered necessary to sell or market products.  *Id.*  If he could accomplish his marketing tasks expeditiously, then he was not required to account to La Ranchera for his time, including how much meal time he took or how long he attended to any personal matters.  *Id.*

Each day he chose to perform services for La Ranchera, Mr. Lagunas had the responsibility to provide documentation about the sales he achieved, together with documentation about new orders that he generated through his individual efforts.  Mr. Lagunas testified about how little actual contact he had with the La Ranchera office:

> Q.    Okay. When you would come back to the La Ranchera warehouse at the end of a day, Mr. Lagunas, who was generally the supervisor you dealt with to make your report?
>
> A.    When all the drivers get there -- well, me personally, we go with Mr. Daniel to report, give him the final report.  We do count the money.  If I receive $4,000 in cash and my receipts say so, I have to check that they are correct.  Then I put it in an envelope.  I report to him, and the big boss receives the money.  There is no supervisor for that.

*See* Exhibit "C-9," Lagunas Depo. pp. 51:21–52:7.[4]

Given that Mr. Lagunas was the direct contact with his customer base, and was not supervised, he was essentially the "marketing point person" for his territory, soliciting sales of products

---

[4] The "Daniel" referred to in Mr. Lagunas' testimony is Daniel Trujillo, La Ranchera's Vice President. *See* Trujillo Decl. at ¶ 5.

and then informing La Ranchera of the results of those activities.  *See* Exhibit "C-10," Lagunas Depo p. 38:25–39:5 (Tax ID redacted); *see* Exhibit "D," Trujillo Decl. at ¶ 5.

### 4.  Performing Outside Sales Activities

Mr. Lagunas also testified that he satisfied his contractual obligation as a La Ranchera Distributor by acquiring and maintaining his own equipment with which to market and distribute La Ranchera's products.  *See* Exhibit "C-5," Lagunas Depo. p. 36:16-37:12.  He also satisfied such obligation by hiring his own assistant with whom to perform his distributorship duties for La Ranchera.  *See* Exhibit "C-6," Lagunas Depo. p. 40:11-20.

### C.  FINANCIAL ARRANGEMENT BETWEEN LA RANCHERA AND LAGUNAS

Mr. Lagunas admits that for serving as a Distributor, his sole source of compensation from La Ranchera was commissions he generated by the products he sold.  *See* Exhibit "C-7," Lagunas Depo. pg. 43:8-15.  Also, Mr. Lagunas confirmed that La Ranchera reported his compensation strictly by Form 1099 documentation.  *See* Exhibit "C-11," Lagunas Depo. *e.g.* p. 17:5-23.

## V.  MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  BURDENS OF PROOF

### 1.  La Ranchera's Burden of Proof

La Ranchera has the burden to demonstrate its defense of "exempt status" as a matter of law.  *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).  If La Ranchera meets this burden, then Plaintiff must produce "significant probative" evidence demonstrating the existence of a triable issue of fact on at least one element of this defense. *Kans. Reinsurance Co. v. Cong. Mortg. Corp*., 20 F.3d 1362, 1371 (5th Cir. 1994). Summary judgment should be granted if the plaintiff's evidence is not significantly probative.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  The ultimate decision on whether the employee is exempt is a question of law.  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir.

2000).  Where the critical facts regarding the employee's work activities are undisputed, and support the defense of exempt status, the Court should grant summary judgment.

### 2.  Lagunas' Burden of Proof

As this Court previously recognized, *see **Dkt. No.** 55* at pp. 3–4, the burden of proof in a summary judgment proceeding is on the same party who would bear that burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Accordingly, under the FLSA, a plaintiff seeking to recover allegedly unpaid overtime has the burden to prove that the employer required him to work more than 40 hours in a calendar week, and did not pay him at 1.5 times his base wage for all such hours worked in excess of 40, that is, the burden of proving "with definite and certain evidence, that he performed work for which he was not properly compensated."  *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981).  Unsubstantiated testimony alone does not suffice, even where an exemption does not apply.  *See Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014).

## VI.  ARGUMENT

### A.  INTRODUCTION

Mr. Lagunas cannot meet his burden to demonstrate he was employed by La Ranchera or the number of hours he worked, irrespective of the existence of an exemption. *See Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 583 (S.D. Tex. 2014) (quoting *Harvill v. Westward Comm'cns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005)).  Without waiving that point, La Ranchera contends that it has separately met its burden to demonstrate its entitlement to Mr. Lagunas' being classified as exempt from eligibility for overtime. *See Faludi v. U.S. Shale Sols., LLC*, 950 F.3d 269, 273 (5th Cir. 2020).  Mr. Lagunas is not eligible to recover overtime because he either qualifies as an independent contractor or, alternatively, as an outside sales exempt employee.

## B.  INDEPENDENT CONTRACTOR

## 1.  Introduction

To prevail on his claim for overtime, Mr. Lagunas must prove "that there existed an em-

ployer-employee relationship during the unpaid overtime periods claimed." *Johnson v. Heckmann*

*Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *see also Weisel v. Singapore Joint*

*Venture, Inc.*, 602 F.2d 1185, 1188 (5th Cir. 1979) (explaining the FLSA covers only employees).

Courts use the "economic realities test" to decide whether an individual is an employee or an

independent contractor.  *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).  In

applying this test, the Fifth Circuit has recently stated that courts must consider "whether the al-

leged employer: (1) possessed the power to hire and fire the employees, (2) supervised and con-

trolled employee work schedules or conditions of employment, (3) determined the rate and method

of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th

Cir. 2012) (citation and quotation marks omitted); *see also Orozco v. Plackis*, 757 F.3d 445, 448

(5th Cir. 2014*)* (applying the *Gray* factors).

Proof of Mr. Lagunas' independent contractor status is revealed by his March 2022 Decla-

ration (Exhibit "A") and by his deposition testimony, which support the conclusion that he was an

independent contractor as a matter of law.  Mr. Lagunas cannot satisfy his burden of showing

otherwise at a trial on the merits, and therefore summary judgment is appropriate.

## 2.  Lagunas' March 2022 Declaration

Mr. Lagunas substantiated the independent nature of the work he performed for La

Ranchera in his March 2022 Declaration:

(a)     "La Ranchera drivers were the ones that needed to obtain new clients," *see* Exhibit "A" at ¶ 6; and

(b)     "La Ranchera did not have any of its own marketing strategies, as it relied on its drivers to sell its product," *see* Exhibit "A" at ¶ 8, demonstrating that Mr. Lagunas possessed significant independent opportunity for profit or

loss, and that La Ranchera had relinquished significant control over his activities, allowing him the freedom to operate his business as he saw fit. *Id*.

### 3. Deposition Testimony

At his deposition on June 2, 2022, Mr. Lagunas testified about his performance of his duties as follows:

(c) He hired various individuals to assist him with his work as a distributor; *see* Exhibits "C-4," C-5," and "C-8," Lagunas Depo. p. 36:16-19; 38:17-19; 40:14-20;

(d) He used his own equipment, delivering La Ranchera products with his own truck; *see* Exhibit "C-4," Lagunas Depo. p. 36:16–37:12;

(e) Additionally, as a Distributor, he was the direct contact for the customer, not La Ranchera; *see* Exhibit "C-12," Lagunas Depo. p. 75:9-10; and

(f) Mr. Lagunas asserted the "clients don't belong to La Ranchera, but to the drivers." *See* Exhibit "C-13" Lagunas Depo. p. 58:8-9.

### 4. Declaration by La Ranchera's Chief Financial Officer

Proof of Mr. Lagunas' independent contractor status is further bolstered by the evidence provided by Brian Trujillo, La Ranchera's Chief Financial Officer. In his Declaration, Mr. Trujillo indicated that La Ranchera:

(a) Had little supervision over work schedule/conditions of employment of a distributor like Mr. Lagunas, *see* Trujillo Decl. at ¶ 5;[5]

(b) Determined the rate and method of payment, *see* Trujillo Decl. at ¶ 3; and

(c) For distributors, La Ranchera only kept distributor agreements and records of sales activity generated by the distributors, as opposed to all the records La Ranchera kept for employees, such as time cards for clocking in and clocking out, benefits related to medical insurance, and individual personnel records. Trujillo Decl. at ¶ 2.

---

[5] Indeed, as indicated above, *see* Exhibit "A," ***Dkt. No.* 10-1**, at ¶ 8, Mr. Lagunas testified that La Ranchera provided him no marketing or other training of any kind to perform as a Distributor.

## C. OUTSIDE SALESPERSON EXEMPTION

### 1. Introduction

Alternatively, and without waiving the foregoing, La Ranchera contends that Mr. Lagunas qualifies as an exempt outside sales employee. *See* FLSA exemption. 29 U.S.C. §213(a)(1).

### 2. Outside Salesperson Factors Established by Department of Labor

Generally speaking, the exemption is premised upon the employee's having the primary duty to make sales, and his or her regularly performing such duties away from the office. The Department of Labor ("DOL") has issued regulations concerning the parameters to consider in evaluating the existence of this exemption. 29 C.F.R. §§541.500 through 541.504(a). Such regulations explicitly contemplate the exact scenario of an individual who both delivers and sells products as demonstrating the existence of the outside salesperson exemption. *See* 29 C.F.R. §§ 541.504 *et seq.*

As a result, Mr. Lagunas' invoking the "route driver" label does not end the DOL's exemption inquiry. Rather, the DOL identifies several non-exhaustive factors to evaluate:

(1)  A comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons;

(2)  Possession of a selling or solicitor's license when such license is required by law or ordinances;

(3)  Presence or absence of customary or contractual arrangements concerning amounts of products to be delivered;

(4)  Description of the employee's occupation in collective bargaining agreements;

(5)  The employer's specifications as to qualifications for hiring;

(6)  Sales training;

(7)  Attendance at sales conferences;

(8)  Method of payment; and

(9)  Proportion of earnings directly attributable to sales.

*See* 29 C.F.R. § 541.504(b).

The DOL accompanies these facts with additional factors bearing upon exempt status.

Thus, an individual who may qualify as an exempt outside sales employee includes:

(1)   A driver who provides the only sales contact between the employer and the customers visited, who calls on customers and takes orders for products, who delivers products from stock in the employee's vehicle or procures and delivers the product to the customer on a later trip, and who receives compensation commensurate with the volume of products sold;

(2)   A driver who obtains or solicits orders for the employer's products from persons who have authority to commit the customer for purchases;

(3)   A driver who calls on new prospects for customers along the employee's route and attempts to convince them of the desirability of accepting regular delivery of goods; and

(4)   A driver who calls on established customers along the route and persuades regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery was made by someone else.

*See* 29 C.F.R. § 541.504(c).

### 3. Application of the DOL Factors and Job Descriptions

In the instant case, of the nine factors enumerated (in 29 C.F.R. § 541.504(b)) above that are applicable, most mitigate in favor of exempt status for Mr. Lagunas.

(1)   **THIRD FACTOR.**  La Ranchera did not restrict Mr. Lagunas from calling upon customers nor require that certain amounts of its product be delivered on a regular basis.  *See* Exhibit "C-8," Lagunas Depo. p. 38:25–39:5; Exhibit "D," Trujillo Decl. at ¶ 5.  Instead, La Ranchera relied on Mr. Lagunas to call on customers and convince them to buy additional La Ranchera products.  *See* Exhibit "A," Lagunas March 2022 Decl. ¶ 8.

(2)   **FIFTH FACTOR**.  La Ranchera required qualifications for persons like Mr. Lagunas including but not limited to; (1) sales experience; (2) ability to work remotely; (3) ability to provide equipment capable of performing the work; and (4) ability to pay for individual expenses associated with performing the work, including vehicle insurance and gas, among other things.  *See* Exhibit "D," Trujillo Decl. at ¶ 4.

(3)   **EIGHTH AND NINTH FACTORS**.  Mr. Lagunas was paid solely on a commission basis, and the entirety of his earnings were directly attributable to his sale of La Ranchera's products.  This arrangement subsumes Factors 8 ("method of payment") and 9 ("proportion of earnings directly attributable to sales").

The second factor (possession of a selling or solicitor's license when such license is required by law or ordinances), fourth factor (description of the employee's occupation in collective bargaining agreements) and sixth factor (sales training) do not apply to the instant situation.  The majority of the applicable factors (factors 3, 5, 8 and 9) favor La Ranchera.[6]

Also, over the time period that Mr. Lagunas sold La Ranchera's products, he handled the responsibility of selling products by himself or with the help of an assistant he hired himself.  *See* Exhibits "C-4," "C-5" and "C-8," Lagunas Depo. p. 36:16-19; 38:17-19; 40:14-20.

Further, none of Mr. Lagunas' work was performed under the supervision of any other individuals.  Trujillo Decl. at ¶ 5.  When Mr. Lagunas worked, he worked outside the presence of La Ranchera's personnel.  Trujillo Decl. at ¶ 5.

## 4. The Fifth Circuit's Analysis of the DOL Factors

The Fifth Circuit has utilized the above factors in determining the exempt status for a driver who (like Mr. Lagunas in this case) sought to recover unpaid overtime but was found to be properly classified as an exempt outside salesperson.  *See Meza v. Intelligent Mexican Mktg., Inc*., 720 F.3d 577, 582 (5th Cir. 2013).

A review of the underlying facts in *Meza* reveal the following:

(1)     The employer sold a line of Mexican food products (food and beverage items to convenience stores);

(2)     Mr. Meza worked with the employer for a period of more than one year;

(3)     Mr. Meza had the responsibility of servicing customers and potential customers in his assigned territory;

(4)     Mr. Meza took the job with the understanding that he would be doing marketing and sales work for the company; and

---

[6] Indeed, as indicated by the Fifth Circuit in assessing exempt status, the summary judgment evidence here demonstrates that Mr. Lagunas was the exclusive sales contact on behalf of La Ranchera for the customers in question.

(5)     When Mr. Meza began working, the employer trained him for his new position by
having him shadow an experienced salesman for a month.  *Id.*

720 F.3d at 578.

The *Meza* Court went on to state as follows:

(6)     In his capacity as a route salesman, Meza would arrive in the morning at the
employer's warehouse and switch from his own car to a company truck he
had loaded with goods the evening before;

(7)     He would drive to between 17 and 22 convenience stores or supermarkets
daily, following a route specified by a supervisor and designed to minimize
fuel use;

(8)     At each stop on his route, Meza would greet the store attendant, inspect any
company-distributed goods on the shelves, remove those that were past or
close to their expiration date, and make a list of goods that needed to be
restocked on his handheld computer;

(9)     If a store did not carry a particular company-distributed product, Meza
would try to sell it by pointing out that it had sold well in other stores, or by
giving the attendant or cashier a sample;

(10)    At the end of the day, Meza would return to the (employer's) warehouse;

(11)    On the way there, he would buy a money order with the cash he had received
from his customers and fill the truck he was driving with gas;

(12)    Once at the warehouse, Meza reviewed his orders with the warehouse work-
ers, and they would provide the required products; and

(13)    Meza would then load the goods into the truck himself.

*Id.* at 578–79.

For purposes of its analysis, the Fifth Circuit hypothesized that Mr. Meza worked about

seventy-two hours per week.  *See Meza*, 720 F.3d at 579.

The *Meza* Court applied the § 541.504(c) factors identified above and analogized Meza's

duties to the illustrative examples provided in the regulations.  *Meza*, 720 F.3d at 582–85.  The

Court found that more factors weighed in the employer's favor than in Meza's.  *Id.* at 584.  Addi-

tionally, the Court found that Meza (1) called on customers and took orders for products, delivered

products, and received compensation commensurate with the volume of his sales; (2) solicited

orders from individuals with authority to purchase products; and (3) called on prospective customers. *Id.* at 585.

In affirming summary judgment for the employer, the *Meza* Court went on to state: "The applicability of any one of the regulations' listed examples would be persuasive; that three aptly describe Meza's duties is arguably decisive." *Id.*

### 5.  Summary Judgment on Misclassification Claim is Proper

La Ranchera's Motion should be granted. Summary judgment is proper because Mr. Lagunas clearly qualifies as an exempt outside salesperson.  Mr. Lagunas' duties during the time of his relationship with La Ranchera can be analogized to all four examples in the DOL regulations pertaining to outside salespersons.

## VII.  CONCLUSION

The Motion thus demonstrates as a matter of law that Mr. Lagunas is properly categorized as ineligible for overtime pay.  His claim for unpaid overtime should therefore be dismissed with prejudice.

WHEREFORE, Defendant La Ranchera, Inc., respectfully requests that the Court grant La Ranchera's Motion to Partial Summary Judgment and dismiss all of Plaintiff's claims.

SIGNED this 25th day of January, 2024.

Respectfully Submitted,

**JACKSON WALKER L.L.P.**

/s/ *Lionel M. Schooler*

LIONEL M. SCHOOLER (SBN 17803300)
Federal Bar No. 726
Jaclyn C. Staple (SBN 24114890)
Federal Bar No. 3241341
Michael Drab (SBN 24115826)
Federal Bar No. 3665349
1401 McKinney Ave., Suite 1900
Houston, Texas  77010
(713) 752-4200
(713) 308-4156 (Direct Fax)
E-mail: lschooler@jw.com

**ATTORNEYS FOR DEFENDANT AND
COUNTER-PLAINTIFF
LA RANCHERA, INC.**

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above *Defendant's Motion for Partial Summary Judgment as to Plaintiff Lagunas' Claim* was filed with the Court's ECF filing system, which will provide electronic notification to all counsel who have appeared in this action, and that a courtesy copy was sent by email to Counsel for Plaintiff, Gregg M. Rosenberg, Rosenberg & Associates, 3518 Travis Street, Suite 200, Houston, Texas 77002, gregg@rosenberglaw.com, on January 25, 2024.

/s/ *Lionel M. Schooler*

Lionel M. Schooler